UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KATHLEEN DINICE-ALLEN :

V. : No. 3:06CV00675 (PCD)

YALE-NEW HAVEN HOSPITAL :

RULING ON MOTION FOR SUMMARY JUDGMENT

Pending in this action arising from plaintiff's employment is defendant's Motion for Summary Judgment on all thirteen (13) counts in which plaintiff asserts violations of her rights. The facts are derived from the parties' L.R. 56(a)(1) statements to the extent they are admitted.

Plaintiff is a 57 year old Caucasian female who was first hired by defendant in March, 1992 as the Hospital's WIC (Women, Infants and Children) coordinator a federally funded nutrition program administered by the Connecticut Department of Public Health (DPH) which grants funds on a budgeted basis for local program administration. Her status was an at-will employee who reported to Patricia DeWitt, age 58, who reported to James Rawlings, age 63, both of whom are African Americans. Plaintiff's WIC performance was unquestioned. In 2001, the DPH determined to restructure the WIC program and issued a Request for Proposal (RFP). In New Haven there were four local WIC programs, each run independently, of which YNHH's was one. YNHH submitted a response to the RFP, initiated by plaintiff and reviewed by DeWitt and Rawlings. DPH chose the Hospital of Saint Raphael (HSR) as the lead WIC agency in New Haven, contrary to YNHH's expectation, as the largest, that it would be so designated. YNHH attempted to preserve its program, and a position for plaintiff, to no avail, and its program became subordinate to HSR by contract and funding. The New Haven WIC Coordinator was located at HSR. All four local programs became program sites each with a Site-Manager/Nutritionist. The

restructuring was partly to save on administration costs which resulted in a reduction of the funds budgeted for the YNHH program and in turn elimination of plaintiff's WIC coordinator position. DPH clearly articulated its wish to concentrate overall administrative supervision and channeling through one administrator for New Haven's WIC program. Pl's Exs. B and C. By budget and contract the senior person in YNHH's program was specified to be a Site-Manager Nutritionist, Ex. 5, App. Ex. 20, who was required to have a nutrition degree which plaintiff did not have. Due to the funding reduction, plaintiff was terminated which she described as due to elimination of the position Def. Ex. 25. She was called on to facilitate the transition.

From February 4, 2002 through May 20, 2002 plaintiff was absent from her job on an authorized medical leave of absence. On her return her duties were unchanged as was her pay..

Due to plaintiff's highly regarded job performance, Rawlings first sought, unsuccessfully, a position for her as WIC Program Outreach Coordinator. With DeWitt's and Rawlings' support she was offered a job as coordinator of a YNHH Easy Breathing Program (EBP) which facilitated, supplemented and aided physicians in treatment of asthma patients. Plaintiff accepted the job, starting February 3, 2003, at a lesser salary as set by the grant budget by which the program was funded. Plaintiff claims an effort was to be made, but not promised as she testified, Pl's. Dep. p. 137, Ex. 5, to find more money for the job, with no assurance of success. No break in tenure resulted. This DPH funded program had a goal to recruit physicians' participation. Though she was the program's senior staff person, plaintiff disputes her responsibility for recruiting, suggesting that was the responsibility of a YNHH non-employee physician who championed the program. The initial program coordinator job description included "encouraging and maintaining overall provider participation in the program," Ex. 12, App. Ex. 25, clearly focusing on the need to achieve the purpose of the program by increasing provider participation. Pl's Exs G, I.. When

issues of plaintiff's job performance arose, her supervision was assumed by Ms. DeWitt by reason of her prior good working relation with plaintiff. The two met weekly. Apart from recruiting, plaintiff's lack of medical background and performance was an issue with Dr. Idelson, the program collaborator, and Dr. Cloutier, the program's funding grantee. On August 13, 2004, Ms. DeWitt advised plaintiff she was to be released from her employment on October 13, 2004. The stated reason was the lack of clinical background to perform the goals of the program. There is no direct evidence that plaintiff's termination as WIC or EBP coordinator nor any alleged harassment was in any way occasioned by her age, race or her FMLA leave.

Plaintiff claims no racial or age articulation against her by DeWitt or Rawlings. Nor did she complain of hostile treatment based on race or age before she complained to Ms. Perrotti, in January, 2004 about her removal from the WIC program and DeWitt's management. Her claim was presented in a memorandum dated January 26, 2004. Def. Ex. 17, App. Ex. 12. with no complaint of age, race or other specific discrimination, only general discrimination.

On February 1, 2006 Connecticut's Commission on Human Rights and Opportunity (CHRO) and the Equal Employment Opportunity Commission (EEOC), to which she had filed a claim on January 25, 2004, notified her of her right to sue. App. Exs. 30, 31.

In a Thirteen (13) count complaint plaintiff alleges a full gamut of violations of her rights based on her treatment and employment decisions of defendant. Defendant moved for summary judgment on all counts which will be discussed seriatim. Defendant asserts there is no evidence which would sustain plaintiff's claim, citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Faced with that assertion, and defendant's showing a record lack of evidence to support plaintiff's claims puts the burden on plaintiff to produce evidence which would present genuine issues of fact for trial of her claims. Id. It is not enough to show "metaphysical doubt" as to the facts.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Plaintiff does not meet her burden by conclusory claims but by producing facts supportive of her claims. F.R.Civ.P. Rule 56(e). It is only from evidence from which an inference may reasonably drawn in favor of plaintiff that she can avoid the entry of judgment for defendant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The record review record must resolve ambiguities and draw all reasonable inferences in plaintiff's favor, Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991), and seek circumstantial evidence from which reasonable inferences may be drawn supportive of plaintiff's claim. Belfi v. Prendeergrat, 191 F.3d 129, 135 (2d Cir. 1999).

A. Hostile Work Environment. Plaintiff invokes Title VII alleging defendant's creation of a hostile work environment by harassment "due to plaintiff's race." Compl. Count One; ¶ 96. Factually, plaintiff has failed in her burden. The requisite harassment is not a matter of a "general civility code," Bickerstann v. Vassar College, 196 F.3d 435, 452 (2d. Cir 1999), nor restraint with respect to expectations of plaintiff's job performance. What is required is subjective or objective abusive conduct of such severity and/or pervasiveness as to create a hostile environment which interferes with an employee's work, Alfano v. Costello, 294 F.3d 365, 373 (2d. Cir. 2002), and permeated the workplace with discriminatory intimidation, ridicule and insult of such severity and pervasiveness as reasonably to be viewed as altering the conditions of employment. Demoret v. Zegorelli, No. 05-183, (2d. Cir. 2006). Altered conditions must be intolerable. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The specific basis for the claim must be shown, and not a mere "unpleasant, harsh, combative or difficult work environment." Paddock v. Brockport, 418 F.Supp 2d 288, 291, 293 (W.D.N.Y 2000). Abuse and hostility is measured by all circumstances, frequency and severity, physical threats or humiliation, a steady barrage of opprobrious racial comments. Williams v. County of Westchester, 171 F.3d 98, 100-01 (2d Cir. 1999).

Plaintiff cites added work duties as EBP coordinator including recruiting providers to participate. She disputes the latter, illogically, as the senior staff person reasonably must work to make the program work as stated in the grant by which it was funded. She cites her replacement by an African-American with no public health management experience. Unspecified hostility by her supervisor after a complaint is noted as well as a change in her hours. She notes a change in her job description to call for clinical background notwithstanding the logic of such in a medical service program. Her noting that after her removal only two additional participants were recruited is not readily reflective of any relevance. She notes her reduced pay in the EBP job, a fact of which she was aware before she accepted the position with only an alleged promise, denied as such in her deposition, to seek more pay for her which did not pan out. Plaintiff concedes no direct evidence of discrimination by her supervisors and her deposition denies any manifestation of racial discrimination or hostility stemming from her race. Pl. Dep. 225-26, App. Ex. 5. Her only suggestion of racial motivation refers to her treatment "done by African-Americans." Pl. Memo. p. 15. No authority is cited for the proposition that decisions by African-Americans with a negative impact on a white subordinate are reasonably construable as racially motivated.

Not only is there no evidence of racial motivation in the conduct cited as creative of the hostility complained of but even if the conduct is credited as alleged, it amounts to no more than a different understanding as to job expectations, personal friction, job duties and qualification altered by an employer, failed compensation expectation, replacement by a clinically experienced African-American lacking in public health management exposure which was not a basis for her displacement. While not improperly viewed by plaintiff as negative, none of what she complains of can be viewed as a basis for finding pervasive abuse of such magnitude as to be reasonably construable as so severe in its hostility and impact on her as to be destructive of the work

environment she anticipated and contemplated or reasonably expected when she took the job

    B. Claim of Discrimination. The claims in Counts Two, Three, Four, Six, Seven, Eight and Nine are based on allegations of age and racial discrimination. When assessing such, under Title VII, ADEA and the Connecticut Fair Employment Practices Act (CFEPA), the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is used. Grey v. City of Norwalk Board of Education, 304 F.Supp. 2d 314, 328 (D.Conn. 2004); Thomas v. Saint Francis Hospital and Medical Center, 900 F.Supp. 81, 90 (D.Conn. 1998); Bedor v. Friendly's Ice Cream Corp., 392 F.Supp 2d 367, 380 (D.Conn 2005). Plaintiffs must initially establish a prima facie case of discrimination which, if found, shifts to defendant the burden of production or articulation of a non-discriminatory reason for its conduct. Defendant's meeting its obligation results in any inference of discrimination from a prima facie case dropping out of the case and the burden of proof of pretext in defendant's reasons and discrimination returns to plaintiff. Texas Dep't of Comm. Affair v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

    Counts Two and Eight allege discrimination against plaintiff on the basis of race and retaliation against her in violation of Title VII and Conn. Gen. Stat. 46a-60(a)(4) after she complained about it to defendant's human resources, a protected activity. Compl ¶¶ 126-128, 239-241. To be a protected activity, complaints must alert the employer to the specific unlawful conduct complained of. Assertion of unfair treatment must clearly be noted as due to the target being a member of a protected class. Ramos v. City of New York, No. 96 CV 3787, 1997 U.S. Dist. LEXIS 10538 @ 7 (S.D.N.Y. 7/22/97). Conduct described as discriminatory, without specificity does not qualify it as protected activity. Gibson v. Judicial Dpt. Court Support Servs. Div., No. 3:05 CV 1396, 2007 U.S.Dist. LEXIS 30950, @ 27 (D.Conn. 4/25/07). Interestingly she

alleges that hostile and retaliatory conduct toward plaintiff "intensified" after her complaint, thus suggesting that at least in part it predated her complaint which would belie its constituting retaliation which would follow the complaint. Her citation of conduct reflective of the alleged retaliation includes threats to her job, refusal of assistance in meeting the demands of her job, refusal of credit for doing her job, requiring her to aid her WIC replacement (obviously occurring before her complaint), imposition of unreasonable job expectations, criticism, yelling at her, belittlement, threatening reduced job hours and release from her EBC position. Compl. ¶¶ 129-138. She also notes her replacement by an African-American and DeWitt's and Rawlings' purported history of favoring that race in employment. Their participation in her placement in the position is relevant in suggesting their acting discriminately to be unlikely. Schnabel v. Abramson 232 F.2d 83, 91 (2d. Cir. 2000).

As noted above there is no evidence of any racial motivation in the conduct of which she complains and she has disclaimed such. Pl's Dep. pp 225-26, App. Ex. 5. Nor did she complain of age discrimination to either her two supervisors nor to Ms. Perrotti, the human resources person. Her complaints were of discrimination generally. Her deposition conceded no recall of complaining to Ms. Perrotti of racial discrimination but alternatively noted being unsure of doing so. Such would not constitute a positive assertion and finding such a complaint to have been made would be speculative. Asserting a feeling of discrimination, without specification, would not constitute assertion of either race nor age discrimination specifically such that defendant would know the specific claim being made. The requirement of protected activity is intended to put the employer on notice of the specific conduct complained of so a reasonable opportunity to rectify the situation would be afforded, an opportunity which is not created by complaints which are ambiguous or non-specific. Gibson v. Judicial Dept. Court Support Servs. Div., No 3:05CV1396,

2007 U.S.Dist LEXIS 30950 at 27 (D.Conn 4/25/07). Heightened friction following her complaint to Ms. Perrotti would not constitute adverse employment action and the end of her EBC position was not reasonably proximate to the complaint to sustain an inference of being causally related.

The complaint of age discrimination further required, as a condition precedent to suit, a complaint to be filed with the CHRO, within 180 days, and with the EEOC, within 300 days. The record reflects neither time limit was met and thus a prima facie case of age discrimination cannot be maintained. See AMTRAK v. Morgan, 536 U.S. 101, 114 (2002). She was notified of her WIC termination on January 10, 2003. Her complaint was filed with CHRO on January 25, 2005. To constitute protected activity from which retaliation could be charged, the employee must show the employer knew of the employee's activity, i.e. the specific discrimination. Jute v. Hamilton Sunstrand Corp., 430 F.3d 166 (2d. Cir. 2005). A general complaint of unfair treatment is not protected activity. Ramos v. City of New York, No. 96 CV 3787, 1997 U.S. Dist. LEXIS 10538, at 7 (S.D.N.Y 7/22/97). Further, the requirement of a nutrition qualification was not met as to the WIC job. That requirement was not shown to have been defendant's decision. Termination of the EBP job, while adverse to plaintiff, was not shown to have occurred in circumstances giving rise to an inference of discrimination. Defendant's explanation, a need for medical background, meets its burden. Absence of any evidence of a discriminatory motivation or pretext, having in mind the reasoning was based on two independent doctors' views, one of whom was the grantee of the fund from which EBC was funded in turn, preclude finding plaintiff met her burden of proving discrimination as a matter of a prima facie case and as a matter of pretext. The nutrition qualification has not been shown to have been established for racial preclusion nor to target plaintiff. Plaintiff's claim that the HSR contract did not require a nutrition qualification flies in the face of its language and is not credible. Plaintiff has provided no evidence to the contrary nor that

she met the requirement, a fact she has not disputed but conceded. The claim she could have kept her on, contrary to her testimony, Pl's Dep. p. 85, as not explicitly excluded by the HSR contract or budget, as to neither of which defendant had the final say, does not explain where the funding for the job would come from since it was not in the approved budget. Her failure of retention as Site-Manager/Nutritionist for lack of the nutrition qualification is further shown to lack discriminatory animus for while the position was filled by a younger person, that person did have the nutrition qualification which plaintiff lacked. Her claim of not being allowed to pursue a nutrition degree lacks merit as that course would take two years.

Plaintiff seeks shelter from the time limit by asserting estoppel based on being precluded from a timely filing by defendant's placing her in the EBP job. The offer of that job and her acceptance of it, even with the possibility of more compensation, was not shown to have been in any way intended to prevent her from filing a timely complaint. Nor is there any basis for suggesting that in fact she was deterred from such filing while so employed, with or without the asserted additional compensation.

Nor has plaintiff shown her treatment to have been different from anyone similarly situated which if true would permit an inference of discrimination. Shumway v. United Parcel Service,, 118 F3d 60, 64 (2d. Cir. 1997); Diggs v. Town of Manchester, 303 F.Supp 2d 163, 176 (D.Conn. 2004). The replacement WIC coordinator was undisputably shown to have nutrition qualification. Her replacement as EBC coordinator, cited as African-American, was clinically experienced and thus presented a different qualification. The suggestion of another hospital employee being replaced by an African-American, without details, does not permit comparison. Absent any evidence of pretext in defendant's reasons for its decisions as to plaintiff's removal from the two positions., defendant's motion is warranted. Johnson v. Conn. Dept. of Corr., 392

F.Supp. 2d 326. 334 (D.Conn. 2005),

For all of the forgoing reasons, the claims premised on discrimination, Counts 2, 3, 4, 6, 7, 8 and 9 are dismissed as the motion for summary judgment is granted as to them.

C. FMLA retaliation. Plaintiff's leave concluded May 20, 2002, after which she returned to the WIC coordinator job without loss of pay or change of conditions. Her evaluation was favorable (above expectations) and a 2.77% merit pay increase was awarded, clear contradictions of DeWitt's claimed hostility. She was displaced in January 2003 and accepted a new job, nine months after her leave ended. Temporal proximity of the adverse action to the protected activity, which is lacking here, is a bell weather of retaliation. See Mody v. GE, No. 3:04 CV 358, 2006 U.S.Dist. LEXIS 8611 at 31-32 (D.Conn. 2/21/06); e.g. Clark City School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). No evidence has been offered to suggest any negative job action followed the leave except the alleged continued hostility of DeWitt which would not constitute an adverse job action. The argument that the claim is time-barred is not refuted. The last possible date of action which could be claimed to be retaliatory would be the date plaintiff terminated as WIC Coordinator and commenced her EBC position, February 3, 2003. That she continued WIC related functions until May or June 2003 is irrelevant since the adverse action of which she complains was the WIC termination. The complaint here, filed on April 26, 2006, is well beyond two years "after the date of the last event constituting the alleged violation," that being her termination whether it is regarded as February 3, 2003 or even as she claims, May or June 2003. 29 U.S.C. § 2617(c)(1). Nor can she rely on the three year limit of 29 U.S.C. § 2617(c)(2) as the complaint does not allege wilfulness, compl. ¶ 300-304, and no evidence is presented supportive of a finding of wilful retaliation. The FMLA retaliation thus fails.

D. Aiding and abetting. Defendant is claimed in Count 10 to have aided and abetted the

CHEPA discrimination. Apart from the failure of that claim, as discussed above, defendant notes that under Connecticut law, such a claim can be made against an individual but not against an employer, citing Canty v. Rudy's Limousine, No. 3:04CV1678, 2005 U.S. Dist. LEXIS 20495 at **7-8 (D.Conn. 9/15/05). As defendant is the employer, the aiding and abetting fails.

E. Negligent Supervision. Relying on the above noted claims of discrimination at the hands of her supervisors, Count 11 charges defendant with supervision responsibility in its failure to correct violative actions in the management of the EBP program resulting in her emotional distress. Negligent conduct within the employment context does not create liability for emotional distress. Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002); Antonopoulos v. Zitnay, 360 F.Supp 2d 420, 431 (D.Conn. 2005). Rather any emotional stress claim is adequately addressed under Title VII, ADEA, and CFEPA, per Canty, supra. Further, the record is bereft of evidence of any notice to defendant of offending conduct attributed to DeWitt or Rawlings, the only claim to Ms. Perrotti being of general, not specific discrimination. Specifically she disclaimed race discrimination. Pl's. Dep, p. 159 See Miller v. Edward Jones & Co., 355 F.Supp 2d 629, 648-49 (D. Conn. 2005). Further, her only claim of negligence was the failure to support her in her work Pls' Dep. 240-42, App. Ex. 5. Absent evidence of notice to defendant of the discrimination complained of, see Abate v. Circuit-Wise, Inc., 130 F.Supp. 2d 341, 344 (D.Conn. 2001; Burford v. McDonald's Corp., 321 F.Supp. 2d 358 (D.Conn. 2004), this claim must also be dismissed.

F. Implied Contract. Count 12 Alleges that defendant, by "words, conduct and adopted policies" of a) not discriminating on the basis of age or race; b) that its employees would conduct themselves ethically; c) employees would not be terminated or retaliated against for complaining of discrimination; d) employees would be disciplined and/or terminated [only] for good and valid reasons. Compl. ¶ 302. An implied contract requires an actual agreement arising from actions or

words. Gagnon v. Housatanic Vally Tourism Dist. Comm'n, 92 Conn.App 835, 842 (2006). Custom or usage do not constitute evidence of a contractual commitment. Christensen v. Bic Corp., 18 Conn.App. 451, 456 (1989). A general statement of nondiscrimination and equal opportunity in employment are not a basis for a breach of contract claim. Davis v. Oyster Bay-East, Norwich Cen. Sch. Disst., No 03-CV1372, 2006 U.S. Dist. LEXIS 82914 @ 48 (E.D.N.Y. 3/09/06. A policy and statements of adherence to anti-discrimination law do not create a contract obligation as a basis for a claim of breach of implied contract. Pecoraro v. New Haven Register, 344 F.Supp 2d 840, 844 (D.Conn. 2004). See Peralta v. Cendant Corp., 123 F. Supp 2d 65, 84 (D.Conn. 2000); Gally v. Columbia Univ., 22 F.Supp.2d 199, 208 (S.D.N.Y. 1999); Belgrave v. City of New York, No. 95-CV-1507, 1999 U.S.Dist. LEXIS 13622 @143-44 (E.D.N.Y. 8/31/99). Plaintiff's conceded status as an at-will employee, see Pl. Dep. 243, App. Ex. 5, belies any contractual entitlement on her part and she cites no evidence suggestive of a contractual undertaking by defendant to the contrary. Count 12 has been withdrawn.

G. Promissory Estoppel. Plaintiff alleges that defendant's business was conducted as to constitute promises, reasserting the policy against discrimination, a promised increase in her EBC compensation and finding her qualified for the EBC position. Compl. ¶ 306. Promissory Estoppel, alternative to a contract, enforces a promise without concomitant consideration. Pavliscak v. Bridgeport Hospital, 48 Conn.App 580, 592 (1998). It requires conduct by the alleged promisor which leads the claimant to change his/her position in reliance on the facts on which the estoppel is premised. Reinke v. Greenwich Hospital, 175 Conn. 24, 28-29 (1978). It is fundamental that a "clear and definite promise" exist which the "promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987). A present intent must be manifest not a mere "expression of intention, hope, desire, or

opinion" which does not reflect an immediate commitment to be relied on. Stewart v. Cendant Mobility Services Corp., 267 Conn. 96, 104-106 (2003). A statement of policy is a statement of intent, a goal and objective and not a basis for a promissory estoppel. Peralta v. Cendant Corp., supra. Plaintiff's only allegation remotely applicable is her assertion that an effort would be made to try to get her more compensation. Neither of her supervisors, DeWitt nor Rawlings promised a raised salary as EBP Coordinator, Pl's Dep. 136-37, App.Ex. 5. At most, contrary to her claim of a Rawlings promise, she stated that "Rawlings indicated he would try to find extra funds." Pl. Dep. 130-140, 137, App. Ex 5; Pl's L.R. 56(a)(3) statement, ¶ 70. Neither Rawlings nor DeWitt was regarded by plaintiff as making a promise. Id., 137. Nothing in the description of the policies relied on contains language suggestive of an intended contract. As in Peralta v. Cendant Corp., the policies merely articulated goals and nothing close to a definite promise defendant could have expected to be relied on. So also the description of DeWitt's hope plaintiff would remain in the WIC program, Pl's Dep. 243-44, App. Ex. 5, nor a statement that plaintiff was qualified for the EBC position implied a promissory intent. Claims of DeWitt's hostility and threats as to her job project no commitment. Accordingly, the promissory estoppel claim fails and is dismissed.

Conclusion: Defendant's motion for summary judgment is granted as to all counts. .

SO ORDERED.

Dated at New Haven, Connecticut this 9th day of January, 2008.

                                            PETER C. DORSEY
                                            UNITED STATES DISTRICT JUDGE